All right. I just have a quick question. I understand on appellants, they're splitting their 20 minutes, 15 minutes to Stephanie Schuster, five minutes to Maya Robbins. Is only one of you going to do rebuttal or are each of you planning to do rebuttal? And you are? Okay. All right. All right. Good morning. Stephanie Schuster Good morning. May it please the court. I'm Stephanie Schuster here for Dave for rebuttal. Okay. Go ahead. All right. Plaintiff's contracts with Reed-Hein are the foundation for their claims against the defendants here. Under either of Washington's tests for equitable estoppel, plaintiffs should not be allowed to avoid the arbitration provisions in those contracts. First, the interrelated claims test is satisfied because plaintiff's whole case is bound up with their Reed-Hein contracts. They claim that the defendants conspired with Reed-Hein to fraudulently induce plaintiffs to enter those contracts, knowing Reed-Hein would fail to perform as required by the contracts and thereby harming plaintiffs, the very harm they seek to sue for and seek recovery for in this case. Plaintiffs also invoke specific contractual provisions to make their claims in this case timely. Isn't all the conduct that they claim gives rise to liability conduct that occurred before the formation of the contracts? Yes and no, Your Honor. There's the fraudulent inducement aspect of it. There's also an element of the consumer protection theory about sort of the ongoing encouragement of consumers, not just the individuals, but as to the putative class. Right. But as to these individuals, because we don't have a class action here yet. That's correct. As to these individuals, isn't all the conduct that they complain of conduct that occurred before the formation of the contracts? These statements, the alleged fraudulent inducement was pre-formation and is again what they say is why they formed the contracts. But their theory of harm is bound up with the performance or more specifically the lack thereof, because without the alleged breach, they have no injury. Their entire theory is that they were induced into these contracts for the purpose of Reed-Hein to breach to the defendant's benefit where they split the allegedly ill-gotten gains. Let me ask you a question that doesn't have to do with either of your theories, but they're both equitable theories. They're equitable, estoppel theories. And we have a rather strange circumstance in this case, which is the actual signatory to the contract. Reed-Hein can't invoke the arbitration clause. So if had these parties sued Reed-Hein, they would have wanted to make claims against Reed-Hein, Reed-Hein could not compel them to arbitration, given the rulings of the American Arbitration Association in the past. It seems rather strange to allow claims, to say that claims against Reed-Hein couldn't proceed to arbitration, but claims against your clients must proceed to arbitration. Why is that equitable? It's really a question of waiver appropriately, Your Honor. And so what the American Arbitration Association found with respect to Reed-Hein is that having failed to pay the required fees to the AAA, that per AAA rules, it was not going to administer arbitrations, and per AAA rules, the plaintiffs could then pursue actions in court. But when we're looking at waiver, you're looking at the intentional relinquishment of a known right. Well, you never had a known right. So you're claiming a right by virtue of equitable estoppel. Correct. So I'm trying to figure out why it's equitable. Well, because Reed-Hein previously failed to pay the arbitral fees and awards, thereby forfeiting any right to compel arbitration. So why should a non-signatory defendant be able to arbitrate claims that a signatory defendant cannot? Answer her question. It's better than mine. Sure. And I understand it to be quite similar. And so it's equitable estoppel gives rise to an independent right. The right of a non-signatory under the equitable estoppel doctrine is not derivative of the signatory. So the contract, it arises from the conduct of the other party, its litigation conduct, and how the claims are framed that gives rise to the right to equitable estoppel here. But doesn't it assume an enforceable arbitration agreement? It does. But again, this is a good question. This one is now no longer enforceable, given the conduct of Reed-Hein, which, by the way, was half owned by one of your clients. Not one of my clients, no. Maybe one of hers. Yours in the aggregate. But in particular, and so I'm being very precise here, the question of Reed-Hein's ability to enforce the arbitration provision or not is not a question of the enforceability of that clause, but about its waiver of its rights under that clause. Reed-Hein's conduct was inconsistent with its right to arbitration. There is no case law and no policy reason to impute that conduct to Ramsey and the defendants here as a waiver of their independent right as a matter of equitable estoppel. Is it also true that there's no case law in Washington that would allow a non-signatory in the position of your clients to enforce this clause? You argue that there's these doctrines, but I'm trying to figure out whether there's – is there any Washington case that allows a non-signatory to enforce an arbitration clause under these circumstances? Absolutely. There are three, and we cite them all in our briefs. Well, but aren't they also – they rely on two theories, do they not? They do. You have the David Terry investments case, the Norwood case, and the decrypt capital case, all of which involved non-signatory defendants compelling arbitration against a signatory plaintiff. But weren't those non-signatory defendants essentially identical or closely related to the signatory defendant? In some of the cases, they were, and in some of the cases, they weren't. That was not essential or even mentioned as part of the holdings in two of those three cases. And in those cases where the Court spelled out their reasoning, whether it was under the interrelated claims test or the direct benefits test, it did not have to do with the relationship between the signatories and non-signatories, but had to do with the relationship between the claims, the wrongs, and issues, in particular, the relationship between the plaintiff's claims and the underlying contractual obligations. So let's separate the theories. Let's look at direct benefits estoppel for a moment. I think – I can't find any Washington case that uses direct benefits estoppel to compel a signatory – to compel a signatory plaintiff to – to arbitrate. Am I right in that? That's correct. No Washington case has yet applied direct benefits estoppel to compel a signatory plaintiff to arbitration, nor has any Washington court foreclosed that. Right. So assuming that – assuming for a moment that I don't want to go there, then your reliance has to be on intertwined claims estoppel, right? Correct, Your Honor. And I'm still stuck with the question of – their claims really seem separate from the contracts here. What they're saying was, you fraudulently induced us to enter into these contracts. It turned out later that – that the Reid-Hein didn't – didn't carry through on whatever it says they promised. But their – and their damages might be measured by the contracts. But we really don't have to interpret the contract in order to – to rule on their claims, do we? You do, and in a couple of different ways. One is that the breach of the contract is essential to their claims. Without a breach, they have no claim that's undisputed. And you have to be able to interpret the contract to determine whether Reid-Hein breached it. But the second has to do with the timeliness of their claims. The plaintiffs allege right in their complaint, and they've done it from the very beginning, that specific terms in these contracts are what make their claims timely. It's what allows them to invoke the discovery rule and bring their claims with them.  What terms? Can you elaborate? Yes, Your Honor, of course. The durational terms. The term that permits Reid-Hein, how long – it's two terms. It's the durational term, how long it has to complete the supposed timeshare exit, and then the definition of exit and what that means. Both of which the plaintiff's claims were deceptive and made it so that they were unable to determine whether these contracts were breached until those terms expired. And that's the theory that they argued to the district court in avoiding the statute of limitations. The theory the district court adopted in ruling that it's because of those contract terms that they have claims that are – More about the theory of exit. Can you say more about that?  So they allege that the – that exit is defined in ways, and I'm going to be paraphrasing the complaint, so the court's indulgence, that includes pseudo-legal processes and, you know, defined broadly enough that it could include anything such, you know, conduct of sitting on your hands or waiting for foreclosure, inducing foreclosure. It's defined in a way that they found confusing and deceptive, which is, again, what they used as to why they couldn't discover their claims. Factually, it appears from the record that separate from this lawsuit there have been settlements with Reid-Hein and that plaintiffs have already been compensated for the money they paid Reid-Hein and or the money they paid timeshare companies while waiting for Reid-Hein to provide services. Is that correct or am I wrong on that? My understanding, Your Honor, and my colleague may have a more fulsome explanation of this, but my understanding, Your Honor, is that while there was a class settlement against Reid-Hein, there was a provision approved in that class settlement that entitled the plaintiffs – the plaintiffs agreed not to enforce. Entitled what? The each-year point. Plaintiffs agreed not to enforce on the judgment. So no money changed hands. Because Reid-Hein didn't have any money. Because Reid-Hein is defunct and insolvent. And they actually didn't receive anything in the settlement. Some did, up to a point. But are those the plaintiffs in this case? Some – or are they not? That, again, my colleague would have to answer. I know that the plaintiffs in this case are members of the class action, the separate class action that Your Honor referenced. But that would be a defense in any action to some form of liability, I suppose. Potentially. Whether it proceeded in arbitration or in court, you could say there's partial settlement or partial satisfaction. Potentially, Your Honor. So if I could just – going back to interrelated claims estoppel for just a moment. Again, we've mentioned the timeliness of the claims, but it's really important to recognize in looking through the complaint, it is replete with allegations about the contracts and about, again, the entire conspiracy here was to get these plaintiffs into contracts that the defendants and Reid-Hein are alleged to have knowingly put together and concocted a scheme for Reid-Hein to breach, and then for the defendants and Reid-Hein to sort of split the profits. And split the ill-gotten profits that, under the plaintiff's theory, should have been returned to them pursuant to these contracts. So that's our theory under the interrelated claims. So I want to go back to your interrelated claims theory. And what's your best case of the three? It seems to me you must be relying on Norwood primarily, correct? I like Norwood. I also like David Terry Investments, Your Honor. Well, but in David Terry Investments, at least we had a non-signatory that was essentially the same person as – and in this case, it seems to me there's a distinction between the individual defendant and Reid-Hein. Certainly. There's no formal relationship between those parties. And again, it was – the comparison of Norwood and David Terry Investments shows that that was not a relevant factor. But what you also have here are allegations of conspiracy, regardless of the relationship between the parties, that they all conspired and jointly worked and acted in concert to induce these contracts, have them formed, and then breach them. Well, the fact that they acted in concert may or may not make this intertwined with the contracts. So I'm trying to figure out how the case law comes into this.  When I look at dekept, decrypt, whatever it is, even if it's a – even if it's a precedential opinion, and I'm not sure it is, that's – it says the doctrine applies when your claims are based on the same facts as a claim against a signatory. And that's not – that's not true here because there is no claim against a signatory. Well, there are. They're just in separate actions, Your Honor. Well, the signatory, it's done. But there were nearly identical claims asserted against Reed-Hein in the separate action that, again, followed when there was essentially proof – judgment proof, and then you have this action follow, trying to impute the same claim for a client. You think – see, I read that as saying when there's an arbitration against a signatory, we ought to get all the claims that are related into a single arbitration. That's the way I read the decrypt case. I didn't read it as saying, well, if there's a closed case against a signatory, we ought to compel arbitration for that reason. I read this as a judicial economy opinion. Well, I don't think it was judicial economy, Your Honor, because the precedent under the Federal Arbitration Act doesn't permit submitting non-arbitral claims to arbitration for purposes of judicial economy. But what you do have – No, but they become arbitrable under this doctrine. Equitable estoppel. Again, it was because the claims were so similar was one of the ways that the court was able to tell that these claims were interrelated and bound up with the contract, which you have here. I just want to get the facts straight, though. In decrypt, there was a pending arbitration. Was there not against the signatory? I believe so, Your Honor. And the issue was whether or not these other folks could join it in effect. I believe so, Your Honor. It was whether the non-signatory's claims also should be compelled to arbitration. That's not true here. No, here, all of the defendants are non-signatories, and that was by design. But again, what David Terry Investments held very clearly is that equitable estoppel, the whole reason the doctrine exists is to prevent plaintiffs from seeking to avoid arbitration agreements that they signed, a signatory plaintiff from avoiding an arbitration agreement they signed simply by suing non-signatories. Regardless of whether they join or don't join a signatory to the case, it's the claims that matter. But that's not true here because they couldn't sue the signatory, correct? I don't know that I follow the premise, Your Honor. They did sue the signatory. They had to arbitrate against the signatory. Well, no, they litigated against the signatory. They had to arbitrate against the signatory, but the arbitration was thrown out because they didn't pay the fees. And so this is not a case in which they made a decision, we'll proceed an arbitration against one side and in court against another. I think you're getting to the judicial economy point, which again is not a determinative factor under either of Washington law's equitable estoppel tests and it's not a permissible reason to compel arbitration under the Federal Arbitration Act. So if there are no further questions, you might want to reserve a little time for rebuttal. Thank you, Your Honor. Did you have any questions, Judge Christin? Yes, I did, but... All right, come back. Come back. Judge Hurwitz doesn't mind too much, just one. I'm surprised you led with Norwood. It seems to me that's a case that's really distinguishable and that there was no way to go forward to determine the nature of the employment relationship or even if there was one without looking awfully hard at that contract. And we're out of time. So what I understood you to be arguing here really had to do that the contract had to be consulted really only for damages and for statute of limitations. That's what I took away from your briefing. You argued today that it had more to do with really had to look to the contract to determine breach and you haven't persuaded me to be blunt. I want to tell you that because I appreciate your advocacy. Could you take another run at that and give me your best shot at it? Why did they have to look at the contract?  I mean, they have framed this case that requires the breach of those contracts in order to demonstrate injury, which is an essential element of their claims. They're going to have to prove that those contracts were breached. And in order to do that, they cannot prove that the contracts were breached without the contract, without demonstrating how it was breached, what Reidine did, whether it actually failed. Just so we can save time, I'm trying to figure out how you think this can be likened to, analogous to, Norwood. Certainly. So Norwood was a case where you couldn't understand the claims without, it was the primary of the five reasons that the court ticked through as to why interrelated claims of estoppel applied. You couldn't understand the claims without the contract. It didn't have to deal with interpretation, which is without the contract. The contract was essential to even understanding the context of the claims. How is your case like that? That is absolutely with this case. This entire case is about a conspiracy to induce plaintiffs to enter into contracts that no party ever had any intention of performing under, and intended to take ill-gotten profits and share them among the defendants here and the signatory of the contract. That's this whole case. And that's what all of the allegations in the complaint show. Without that contract, they have no claim. They have no claim of injury, putting aside the timeliness piece, which we do think is sufficient on its own. They have no theory of liability, and they have no injury without the Reidine contracts. Thank you. Thank you very much. I'll give you one minute for rebuttal. Thank you, Your Honor. Good morning. Good morning. As I mentioned, I'd like to reserve one minute for rebuttal, but I may cede that to my colleague to give her a little extra time as well. I, just as a preliminary note, I wanted to just correct the record a little bit. Reid-Hein, or sorry, Happy Hour, 50 percent, is 50 percent owned by McKay-Max, Inc., which is a different company. Reid-Hein did not own Happy Hour. They're totally different entities. When you deal with a separate company, who owns it? What'd you say? Sorry. Who owns a separate company? The separate company, I think, is nearly, almost entirely owned by Brandon Reid, who admittedly was an owner of Reid-Hein. Okay. So he effectively owes half of Happy Hour. Well, sure. I guess I'll give you that one. But I just, as a preliminary note, obviously, I'm here to talk about my client, Happy Hour Media Group, completely different company from the Ramseys. We agree with the, and incorporate my colleague's arguments up here. We believe that direct benefits estoppel applies. Really, fundamentally, the district court's order allows these plaintiffs to utilize the contract as effectively a sword and a shield here. Well, I understand the intertwined argument. Tell me what benefit these plaintiffs got out of the contracts. Well, I believe the benefit is here more that they are seeking to recuperate funds. Like, the benefit is more just that they're able to bring this lawsuit and- Well, but that's, see, normally the direct benefits doctrine applies when I got some benefit out of the contract, and now, but I'm now seeking to avoid it, or seeking to avoid its arbitration clause. And here, their theory is, not only did we get no benefit out of the contract, we were injured by it because we paid money to no effect. I understand how that may lead to the intertwined doctrines theory, but I'm having difficulty seeing how the direct benefits theory applies. I understand. That's an interesting point. I think here, you know, these claims have not yet been proven. Obviously, this case is in its infancy. We have not moved beyond this motion to compel stage. As your honors are well aware, there was briefing on motions to dismiss. But beyond that, it has not yet really been proven in this lawsuit that these plaintiffs actually suffered any kind of alleged injury, right? All right, but that's the, but their theory is that they did. They're not seeking, nobody claims, I mean, they're not claiming they took a benefit out of the contracts. They're not claiming that their timeshares were wiped away, or that they got their money back. And you don't really claim that their timeshares went away, or that they got their money back. Certainly. So I'm trying to figure out what benefit you claim that they got under these contracts. Well, in that instance, your honor, I mean, there wouldn't really be a claim, right? If they had actually gotten out of their timeshare, right? So if the question is like, well, what's the benefit here? They, you know, they didn't get out of their timeshare. They didn't get X, Y, or Z relief, right? Pursuant to the contracts that they signed. If they had gotten any of that, there wouldn't be a claim, and there wouldn't really be any use. And that's why I'm having trouble figuring why this is a direct benefits case. They claim they got no benefits. You really don't say, oh, yes, you do. Yes, you did. We got you out of the contract, or we gave you your money back. So I don't see any benefit anywhere in this case. Sort of claiming a speculative, imagined injury, but benefit, but it's not here. It's not the facts of this case. I think, again, here the benefit is that they're trying, they have this contract on which they've premised this class action for which they're requesting, you know, God knows how much money. And they're, at the same time, so they're saying, well, we need this contract. The problem here was you guys didn't deliver under the contract. So we're bringing this case to recuperate money. Well, at the same time, they're deliberately avoiding their obligations under the contract to arbitrate their claims. And again, you know, plaintiffs have basically studiously ignored the fact that it is on them to arbitrate these claims as well because they are signatories. And I know that you discussed that with my colleague, and I can let her expand upon that if needed. But again, I think that the benefit here is the idea that they are seeking, that they have this, what's the word? Like this recourse, I suppose, pursuant to the contract. Because as my colleague said, you know, without the contract, there really are no claims. They would not have had this relationship with Reid Hine. Of course, anybody could listen to Dave Ramsey or whoever, you know, CNN. The validity of the contract in question here? At the, well, I guess, can you specify what you mean by that? Well, is anyone saying there wasn't a contract? That there's not an enforceable contract? No. I mean, at this stage, I think that's not really in question. Like, obviously, they did sign a contract with Reid Hine. And so, no, I don't think that, on the point of the arbitrarility, definitely not. And I would say, you know, at this point, the question of whether the contract was breached in any way, that's more kind of the issue, I would say. And again, there's still a question of that. Any other questions?  All right. Okay. Basically, your time's up. Okay. All right. Nothing to cede. Thank you. All right. We'll hear from the appellees. Good morning. Good morning, Your Honors. Roger David Heiser, may it please the Court. Maybe you can just start with answering the question about did anyone get anything out of this? Not that we've been able to find. No, no. I mean, so, yeah, no. Have there been any settlements with Reid Hine? Have plaintiffs already been compensated for the money they paid Reid Hine and the money they paid Timeshare companies while waiting for Reid Hine to provide services? None of the named plaintiffs have, no. Now, whether or not, when we put the class together, we'll be looking at that issue in terms of who will be a member of the class. But at this point, representing the named plaintiffs, the answer— They haven't gotten any money? They have not received any benefit from the contract. What about the theory regarding intertwined claims? I've said that I'm not persuaded. There's the three cases that we looked to from Washington. It seems to me that the Norwood case in particular is really a tangled situation that where the claims would have made no sense at all. What about the other cases? Well, I think all of the cases. I mean, the Terry case also requires that the claims that are pled be dependent upon the contractual rights and obligations. Why isn't that the case here? Just to follow up on Judge Callahan's question. My understanding is there's no question this is a binding contract, and nobody's challenging that. That's not part of this litigation. That's not part of this litigation. The contract is not part of this litigation. When I was listening to the questions and responses, I thought, well, maybe the easier way to approach this is to look at why the contract might arguably be even relevant in this case when we litigate it, when we try it. And I suppose that you might find some evidence. That might be one repository of evidence for the amount of damages in the form of how much was paid up front. Well, that's what they've argued. And I don't have very many questions for you. But they've argued that the contract is relevant and the intertwined theory, that's what they're relying on, because of damages, because of statute of limitations. And today, another argument or a more fulsome argument about the definition of the breach, what it takes to exit. Do you want to speak to that point? Well, I don't think it's very complex. I think what my clients were deceived into believing by the conduct of Mr. Ramsey and the happy hour defendants was that this was the only way, the only trusted way to extinguish these onerous obligations that they had taken on with these timeshares. And in fact, we've got, I mean, there's hours and hours of recordings and radio shows and scripts. Are you speaking to breach now? No, I'm speaking to deceptive conduct. My question is different. My question was, I was asking about the interconnectedness, right, of these claims, of your clients' claims to the contract. And I questioned the extent to which those contracts are necessary to resolve these claims at all that have to do with promotion. That's an oversimplification. And opposing counsel answered that it's not just that we need to look to the contract for damages and for statute of limitations, but that also we need to look to the contract to determine the definition of exit. And that's what I'm asking you to respond to. No, that's not the case. The case can be tried. I mean, whether or not you, how you can legitimately and lawfully exit a contract and breach, you know, break a contract is a matter of law. It's an issue that if it's not within the common understanding of the jury, we can bring experts in if the court deems that they're helpful and appropriate. To speak about what the appropriate ways to exit someone from a timeshare contract might be, that has nothing to do with the contract. Well, you mentioned damages under the intertwined estoppel theory. If you are seeking damages, which you said, that might be the way. And if you are seeking damages based on the contracts, then why aren't your claims intertwined with the contracts? Well, because the damages, we're not seeking damages based upon the contracts. Well, you just said you were. No, I said that, and I apologize if I didn't speak clearly. The measure of those damages may be found in a dollar amount that was put into a contract in terms of the upfront payment. But that amount is also found in the ledgers of the company. I mean, it's found in a lot of evidence of that is found in a lot of other. It's all tort and statutory claims? They're all statutory and tort claims, yes. And the predominant claims in this case are under the Washington Consumer Protection Act for pre-contractual conduct. Promotion, basically. Promotion, is that right? Promotion. Marketing. Let me ask the question, the same question we've been asking a little bit differently. Had your clients not been induced to enter into the contracts by the allegedly tortious activity of the defendants, you'd have no claim. Well, that's a very good question, Your Honor, because perhaps under a common law fraud. Well, under any theory. Well, not under. What would have been there? They would have had no damage even under the Washington Consumer Act. Maybe there's a claim for injunctive relief or something. Yes, and that's an issue of causation. Okay, but just stop. I think we can agree on this without quibbling. I mean, your client's claim for damage in this case arises from the fact that the allegedly tortious activity of the defendants induced them to enter into these contracts. Yes? Well, induced them to pay money or to. Come on. Come on, let's do it. Yes, yes, yes. But there was no. We haven't gotten to the money question yet. So let's just, let's agree on that for a second. My question is, is that enough to make these intertwined with the contracts, or is it not? Because you're not going to convince me that your real claim here is that you induced me and induced us to enter into these contracts. So assuming that I believe that, does that make them intertwined, or does it not? I have not found a case that would suggest that that makes them intertwined. The case law that I've read seems to suggest that there needs to be more than just reference to a contract. Okay. So tell me what more there needs to be and why that's not present here. Well, we would allege. Well, so for example, this would be a very clear case. If Mr. Ramsey wants to step up to the plate and repay the, and guarantee the 100 percent money back guarantee that was made in the contract, that would be a contractual issue, right? That would be, you know, if we were saying Mr. Ramsey. Not suing for enforcement of the contract. Exactly. I mean, if he wants to, I mean, if they're saying they want to do that, then maybe that changes the calculus a little bit. But that's a lot of money. The fact that your claims are based on, the fact that your claims were based on the inducement of your clients into a contract, in your view, is not enough to make it intertwined. I don't believe so, Your Honor. Let's get to their second. There's another argument they make. They say, well, you can't know whether there was damage unless you find a breach of contract, because if they actually did what they promised, then you have no damage, even if you were fraudulently induced to enter into the, what's your answer to that? Well, I mean, I guess there are, let me see how I can, how I can articulate this. And I guess that they can be one in the same thing, but they're not necessarily the same thing, right? I mean, in other words, to sit back and say, I didn't get anything of value. I paid something of value, and I didn't get anything in return. I've lost all this money. I've been harmed in my property. I'm using the language of the Washington Consumer Protection Act. Okay. Well, how are you going to prove that you've been harmed? Well, someone promised, and this is where we get to the contract. Someone said, I was told if I paid X, you know, if I paid person A X amount, they would get me out of my timeshare, and they didn't. Yes, that's a breach of that contract that I had with person A, but the inducement that caused me to do that made by person B is separate and apart from that contract. So I guess the end result is the same, but you don't need to interpret the contract and all the terms of the contract to determine that. Every time you step away from the microphone, I can't hear you. I'm sorry. That's all right. You were saying that you— My old habits as a trial lawyer. I apologize. You said that you don't need to look at the contract because—that's why I missed you, your voice. Yes. You don't need to look at the contract to determine whether or not they were exited from their timeshare obligations. They either were or they weren't. It's a simple fact. But don't we need to look at the contract? And I'm not sure this makes it sufficiently intertwined. My difficulty is that I'm not sure the doctrine is tied to whether or not one needs to look at the contract. I'm trying to figure out what intertwined really means. Surely one needs to see whether they promised in the contract to get out of their timeshare obligations or whether they promised to return money if they couldn't. That may or may not make it intertwined. So I don't think the doctrine turns on whether or not one needs not look at the contract. I'm trying to figure out what are the sufficient indicias of intertwining. Well, maybe I can answer—I can't answer the question directly because I haven't found any case law that kind of looks at facts similar to ours and says they're intertwined. The case law that's out there, the facts are much more definitive in terms of the intertwined nature, you know, if it's an employment contract and the suit is for breach of that employment contract and— Well, that's the Norwood case. It was hard to figure out whether there was an employment contract at all. That was a very—it's almost the opposite end of the spectrum in my view. This is a little closer, it seems to me. You have to look at the contract for—and the claims arise out of the contract at least for damages. And they have—their contention is that you relied on this to beat a statute of limitations argument earlier in the case. Do you want an opportunity to respond to that? Yes. And I will—I mean, it would be disingenuous of me to say that the contract doesn't hold evidence that's relevant to damages or that it doesn't hold evidence that's relevant to the breadth of the class when it comes to statute of limitations. What about the statute of limitations? Well, that's— Can you just respond to the argument opposing counsel, maybe? Yes. Yes. I think that we did make an argument below in terms of what claims would be viable under—that were still viable under the statute of limitations that the contract itself provided a period of time to allow Reid Hine to get these people—to get our clients out of their timeshares. And so that their knowledge of— Had to do with the start of the statute of limitations period? Yes. Because of the— That was my impression. And I think you've answered my question.  Thank you. I really—I don't know that there's anything more to add from our briefing. You don't need to say any more if we don't have any questions. I think we've covered—I have other thoughts on other topics that were briefed, but they haven't come up in this argument, and so I'll— To the students that—we never penalize someone if they don't want to utilize all of their time. It's up to them. But they have to answer our questions. They can't say, oh, I'm done if we have more questions. So it basically—if you have no additional comments, we don't appear to have any additional questions, and you can conclude your comments. Thank you. Thank you very much. All right. One minute. Rebuttal. Thank you, Your Honors. I'll be very brief. First, I just want to touch quickly on the question about whether fraud in the inducement of this contract is enough for purposes of the interrelated claims test. And I just want to quickly point the court to both the David Terry investments case where you had allegations that fraudulent statements were made to induce the contract both before the contract was formed as an inducement and during the contract, as well as the metal-clad case, which is the California case, but it's the California case that David Terry Investments relies on when defining the equitable estoppel doctrine for purposes of Washington law. And in that case, what the court said, that when you have allegations that the signatory and non-signatory colluded to obtain a fraudulent contract, you cannot help but have inherently intertwined claims for purposes of equitable estoppel. And in my last few seconds, to just touch on direct benefits estoppel, my first point there is we look to whether the plaintiff claims a direct benefit or knowingly exploits the contract for purposes of the lawsuit, which they do here by focusing on their right to either a refund or an exit. But more importantly, the plaintiffs do not dispute that they claim a benefit. They dispute whether Washington law permits the doctrine to apply in this signatory, non-signatory circumstance. Thank you for your argument. Both this matter will stand submitted. This court will be in recess until tomorrow morning. Our madam clerk and attorney, Mrs. Dodds, do you wish the students to remain in the courtroom? Yes, they can go to, we'll take a quick break. All right. And the law clerks will accompany them as well. And we will conference at this point to join them subsequently. Thank you. All rise. The court stands in recess until, the court stands in recess until tomorrow morning.
judges: CALLAHAN, CHRISTEN, HURWITZ